UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACK AND VAN DYKE MINI
MART, LLC,

      Plaintiff,

v.                                                      Case No. 24-10260

CITY OF DETROIT,                        Sean F. Cox
                                                        United States District Court Judge
      Defendant.
_____/

## OPINION & ORDER
## GRANTING, IN PART, PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Mack and Van Dyke Mini Mart, LLC ("Plaintiff") owns and operates a gas station in the City of Detroit, Michigan. Plaintiff filed this § 1983 action against the City of Detroit, asserting a procedural due process claim, and other claims, after the City revoked its business license and conducted an emergency closure of the gas station on January 25, 2024. The matter is before the Court on Plaintiff's motion seeking a preliminary injunction. The parties have fully briefed the issues, no evidentiary hearing was requested, and the Court heard oral argument on February 12, 2024.

For the reasons set forth below, the Court GRANTS the motion to the extent that the Court agrees that Plaintiff has established a substantial likelihood of success on its procedural due process claim because Plaintiff was not provided a *timely post-deprivation hearing* by the City. The Court shall therefore issue a preliminary injunction requiring the City to expedite Plaintiff's post-deprivation hearing, currently scheduled for February 21, 2024.

## BACKGROUND

1

A.      **Procedural Background**

Acting through counsel, on January 31, 2024, Plaintiff filed this action against Defendant City of Detroit, based upon federal-question jurisdiction.  The case was initiated and opened based upon Plaintiff's filing of a "Verified Emergency Complaint For Temporary Restraining Order, Show Cause Order And Preliminary Injunction."  (ECF No. 1).

Plaintiff's Complaint asserts the following three counts: 1) "Count I: 42 U.S.C. 1983 Violation of 14th Amendment Due Process;" 2) "Count II: 42 U.S.C. 1983 Violation Of Fifth Amendment: Unjust Taking/Illegal Seizure;" and 3) "Count III: Injunctive/Declaratory Relief."

This Court scheduled a Status Conference in this matter for February 5, 2024.  (*See* ECF No. 3).  This Court typically holds such conferences on an expedited basis, to see if the parties are able to reach an agreement as to requested injunctive relief, even if on an interim or temporary basis.

On February 2, 2024, Plaintiff filed an "Emergency Motion for Temporary Restraining Order."  (ECF No. 6).

The parties appeared for the status conference on February 5th but did not reach any kind of agreement or resolution.  On February 5, 2024, the City advised that it could file its response to the motion by Wednesday, February 7, 2024 and it did so.  The motion has now been fully briefed.

B.      **Factual Background**

Haissan Nassar is an owner of Plaintiff Mack and Van Dyke Mini Mart, LLC.  (Nassar Decl., ECF No. 6-4).  Plaintiff operates a gas station on Mack Avenue in the City of Detroit ("the Gas Station").

Approximately six weeks ago (*ie.*, in December of 2023), Plaintiff's manager informed Nassar that one of his employees was selling marijuana out of the store of the Gas Station, from behind the counter.  (Nassar Decl., Compl. at 3).  Nassar states, "I instructed my manager to fire this employee on the spot."

On January 25, 2024, the Detroit Police Department Vice Enforcement Unit conducted an undercover operation at the Gas Station.  (*See* Police Reports, Def.'s Exs. A & B).  The police reports reflect that undercover officers entered the Gas Station and purchased marijuana from an employee working behind the counter.  The reports reflect that, prior to making that purchase, the officers observed three different employees inside the Gas Station store: 1) Macus Holmes, a clerk working behind the counter; 2) a woman, later identified as Samah Alkhafaji, working a register; and 3) a man, Sadia Alkanas, who later identified himself as a manager.  An officer asked the female for a "dime bag" and she directed the officer to Holmes.  Holmes then made a sale to an uncover officer.

Holmes was soon thereafter arrested and ultimately taken to the police station. The officers found seven individually-packaged bags of marijuana behind the counter, inside of a white grocery bag.

After Holmes was arrested, officers advised Alkanas, who identified himself as a manager, that an undercover marijuana buy had taken place.  Officers notified the City's Building Safety Engineering Environmental Department ("BSEED") about the situation.

Paul Magnan is employed by the City of Detroit's BSEED as a Building Inspector. (Magnan Aff., ECF NO. 8-1).

On January 25, 2024, he was contacted and arrived at the Gas Station.  Magnan

3

"investigated the situation and determined that the subject property is not licensed to operate as a marijuana dispensary, and determined that the undercover sale of the marijuana to the police posed an immediate danger to the health, welfare and safety of the public based on" the fact that a "Certificate of Compliance is required for the Subject Property pursuant to Section 8-15-35 et seq. Detroit Property Maintenance Code." (*Id.*). Magnan states that: 1) the owners of Plaintiff "have failed to abate, correct, repair, or remove the public danger and nuisance at the Subject Property; 2) the Station is located in a high traffic area where under aged children have access.

After Holmes was arrested and taken away, Plaintiff's remaining staff members were advised by Magnan that he was issuing an emergency business closure of the Gas Station. The premises were then closed and padlocked and a placard was placed on the doors.

The City asserts that, on January 25, 2024, Magnan spoke to Nassar (and another owner) who were already on site and they were given notice of the emergency closure of the location "for engaging in unlawful use and advised of the necessary steps to obtain the property certificates of compliance." (Def.'s Br. at 3; Magnan Aff.).

"A hearing to adjudicate the appropriateness of the Closure is scheduled to take place on February 21, 2024." (Magnan Aff.).

On January 30, 2024, "Plaintiff" (presumably Nassar) returned to the Gas Station to check on its condition and saw that the City had "affixed two notices on the window, one claiming that BSEED mailed a "Correction Order" "on December 1, 2023 due to [prior] marijuana sales occurring on the premises." (Compl. at ¶ 18). Nassar claims he never received the notice regarding the December 1, 2023 alleged sale of marijuana at the Gas Station, before seeing it posted on the window. (Nassar Decl.).

4

**ANALYSIS**

The motion filed by Plaintiff is titled, "Emergency Motion For Temporary Restraining Order."   But Plaintiff's proposed order reflects that Plaintiff appears to actually be seeking a preliminary injunction.  (*See* ECF No. 1 at PageID.21) (proposed order titled, "Order for Preliminary Injunction.").  Because of that, and in light of the fact that the City has filed a response brief opposing the motion and appeared before this Court, the Court will treat it as a motion for preliminary injunction.

When deciding whether to grant a preliminary injunction, this Court considers four factors: 1) whether the movant has shown a strong likelihood of success on the merits; 2) whether the movant would suffer irreparable injury absent the injunction; 3) whether the injunction would cause substantial harm to others; and 4) whether the public interest would be served by the issuance of an injunction. *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 554 (6th Cir. 2021) (citations omitted).

"When a party seeks a preliminary injunction on the basis of a potential constitutional violation," however, "the likelihood of success on the merits often will be the determinative factor." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).

Where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, a district court need not hold an evidentiary hearing. *Nexus Gas Trans., LLC v. City of Green, Ohio*, 757 F. App'x 489, 496-97 (6th Cir. 2018).  Neither party requested an evidentiary hearing with respect to the pending motion.

**I.      Likelihood Of Success On The Merits Of Procedural Due Process Claim**

Plaintiff's Complaint asserts that the City's actions constitute a violation of its Fourteenth Amendment procedural due process rights.  Plaintiff's motion asserts that it has a strong likelihood of success on the merits of that claim.

On January 31, 2024, Plaintiff filed this § 1983 action against the City of Detroit. Plaintiff's Complaint includes a procedural due process claim.  As written, it alleges that Plaintiff's gas station was closed and padlocked on January 25, 2024, and that: 1) Plaintiff was given no pre-deprivation hearing before the closure; and 2) that no post-closure hearing was being provided either.  Plaintiff alleges that violates his procedural due process right and asks the Court to issue an injunction that would require the City to reopen the station and return/reinstate Plaintiff's business license.

The Court realizes that these kinds of cases, with motions for TROs, move quickly and facts are learned as the case proceeds.  It is now apparent that Plaintiff's assertion that it has been given no post-closure hearing date is not true – the City has scheduled a hearing date for February 21, 2024.

To prove a § 1983 procedural due process claim, the plaintiff must establish the following three elements: 1) that he has a life, liberty, or property interest protected by the Due Process Clause; 2) that he was deprived of that protected interest; and 3) that the state did not afford him adequate procedural rights prior to depriving him of his protected interest. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

In practice, procedural due process claims are addressed in two steps. *Kaplan v. University of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021). First, the Court determines "whether a constitutionally protected property interest is at stake." *Id*. Only if the Court finds that it is,

6

does the Court proceed to the second step of considering "the procedures necessary to protect that interest." *Id*.

Michigan cases establish that the holder of a business license generally "does have some fourteenth amendment property interest in the license." *Taylor Novelty, Inc. v. City of Taylor*, 816 F.2d 682 (1987) (citing cases such as *Bundo v. City of Walled Lake*, 395 Mich. 679 (1976) and *Detroit v. Mashlakjian*, 15 Mich.App. 236 (1969)). Thus, the Court assumes that Plaintiff has a protected interest in its business license.

"However, merely to say that there is a property interest does not determine what process is due." *Taylor Novelty, Inc., supra*. So the Court must consider what process was due Plaintiff under these circumstances.

Plaintiff's somewhat evolving position appears to be that it was entitled to a pre-deprivation hearing, or at least a *timely* post-deprivation hearing. Plaintiff contends that keeping its Gas Station closed until a hearing is held on February 24, 2024 (ie., nearly a month after the emergency closure) violates its procedural due rights.

**A.    The Court Is Not Persuaded That A Pre-Deprivation Hearing Was Required.**

To the extent that Plaintiff claims it was not afforded adequate process because it was not provided a pre-deprivation hearing prior to the closing, this Court is not persuaded that pre-deprivation hearing was required under the facts and circumstances presented here.

"'A fundamental requirement of due process is the opportunity to be heard. It is an opportunity which must be granted at a meaningful time and in a meaningful manner.'" *United Pet Supply, Inc. v. City of Chattanooga, Tennessee*, 768 F.3d 464, 485 (2014) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The Sixth Circuit has explained:

It is the general rule that due process "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (collecting cases). But there are exceptions to this rule. For example, "we have held that the failure to provide a pre-deprivation hearing does not violate due process in situations where a government official reasonably believed that immediate action was necessary to eliminate an emergency situation and the government provided *adequate post-deprivation process*." *United Pet Supply*, 768 F.3d at 486 (collecting cases); *see also Spinelli v. City of New York*, 579 F.3d 160, 170 (2d Cir. 2009). And under the *Parratt* doctrine, "[c]ourts may dismiss a procedural due process claim if the state provides an adequate postdeprivation remedy" and the following conditions apply: "(1) the deprivation was unpredictable or 'random'; (2) the predeprivation process was impossible or impracticable; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 907 (6th Cir. 2014) (quoting *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (per curiam)).

*Johnson v. Morales*, 946 F.3d 911, 921 (6th Cir. 2020) (emphasis added).

Thus, the failure to "provide a hearing prior to a license or permit revocation does not per se violate due process." *Id*. "Thus, the balancing test from *Matthews v. Eldridge*," 424 U.S. 319 (1976), "determines whether the government must provide some type of hearing before suspending a business license." *Johnson*, 946 F.3d at 923. That test weighs three factors: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and 3) the government's interest, including the function involved and fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id*.

Having considered those factors, in light the facts and circumstances presented here, the Court is not persuaded that a pre-deprivation hearing was required.

8

**B.      Plaintiff Has Not Received A Timely Post-Deprivation Hearing.**

But the Court finds merit to Plaintiff's position that it was entitled to a *timely post-deprivation hearing* and it has not received one.  It is undisputed that the City closed Plaintiff's Gas Station on an emergency basis on January 25, 2024, and revoked its business license at that same time – all without providing any kind of pre-deprivation hearing.  This Court concludes that a post-deprivation hearing, held nearly a month after the business's emergency closure and loss of license, is not reasonable and does not comport with due process.

**C.      The Most Appropriate Remedy**

"The appropriate remedy" for a procedural due process violation "often depends on the stage at which the violation is found and the relief sought."  *Brody v. Village of Port Chester*, 345 F.3d 103,120 (2d Cir. 2003).  As explained in *Brody*:

> Where damages are sought for a due process violation that has already occurred, courts consider whether the evidence demonstrates that the outcome would have been different had the required process been afforded. *See, e.g., Miner v. City of Glens Falls*, 999 F.2d 655, 661–62 (2d Cir. 1993) (affirming award of compensatory damages, including back pay, where undisputed evidence demonstrated that police officer would not have been terminated had he been given the required hearing). *On the other hand, where injunctive relief is sought, courts simply have ordered the responsible government entity to provide an opportunity for process going forward. See, e.g., Goldberg v. Kelly*, 397 U.S. 254, 260, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (holding that the government must hold pre-deprivation hearings before terminating welfare benefits); *Krimstock v. Kelly*, 306 F.3d 40, 68–69 (2d Cir. 2002) (finding that New York statute deprived claimants of due process by not affording a meaningful opportunity to be heard and ordering that claimants whose vehicles were seized pursuant to New York statute *be provided prompt post-seizure retention hearing*).

*Id*. (emphasis added).

Here, the Gas Station has already been closed by the City and Plaintiff's license revoked.  Thus, the City cannot now offer Plaintiff any *pre*-deprivation hearing.  Plaintiff's pending

motion does not seek monetary damages.  Rather, Plaintiff seeks injunctive relief and asks the

Court to order the City to reopen its Gas Station, and return its business license, without holding

a hearing.

Plaintiff has offered no authority to support that request.  The Court concludes that the

more appropriate remedy is for the Court to order the City to timely hold a post-deprivation

hearing (and if it fails to do so, then order it to reopen the business).

## II.    Irreparable Injury Without The Requested Injunction

Courts have held that a "plaintiff can demonstrate that a denial of an injunction will cause

irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights."

*Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)).  Thus,

this factor also weighs in favor of injunctive relief.

## <u>CONCLUSION & ORDER</u>

For the reasons above, the Court GRANTS IN PART, AND DENIES IN PART,

Plaintiff's motion for injunctive relief.  The Court GRANTS the motion to the extent that the

Court agrees that Plaintiff has established a substantial likelihood of success on its procedural

due process claim because Plaintiff was not provided a timely post-deprivation hearing by the

City.  The Court shall therefore issue a preliminary injunction requiring the City to expedite

Plaintiff's hearing, currently scheduled for February 21, 2024.  The motion is DENIED in all

other respects.

IT IS SO ORDERED.

s/Sean F. Cox                                        
Sean F. Cox
United States District Judge

Dated:  February 12, 2024

I hereby certify that a copy of the foregoing document was served upon counsel of record on

February 12, 2024, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager